[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

SOFTVIEW LLC,

Plaintiff,

v.

SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.,

Defendants.

Case No. 2:25-cv-00246-JRG

JURY TRIAL DEMANDED

**DEFENDANTS SAMSUNG ELECTRONICS CO., LTD.**
**AND SAMSUNG ELECTRONICS AMERICA, INC.'S**
**MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT**

[redacted]

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. STATEMENT OF THE ISSUES TO BE DECIDED .......... 1

III. STATEMENT OF UNDISPUTED MATERIAL FACTS .......... 2

IV. LEGAL STANDARDS .......... 3

V. ARGUMENT .......... 3

A. The Court Should Grant Summary Judgment That The Accused Products Do Not Infringe The Asserted Patents. .......... 4

1. Samsung Is Entitled To Summary Judgment That The Accused Products Do Not Infringe The ’729 Patent. .......... 5

2. Samsung Is Entitled To Summary Judgment That The Accused Products Do Not Infringe The ’353 And ’889 Patents. .......... 6

3. Samsung Is Entitled To Summary Judgment That The Accused Products Do Not Infringe The ’628 Patent And Certain Claims Of The ’889 Patent. .......... 7

4. Samsung Is Entitled To Summary Judgment That The Accused Products Do Not Infringe The ’154 Patent. .......... 10

B. Samsung Is Entitled To Summary Judgment That The Accused Products Include A Non-Infringing Alternative Zoom Feature. .......... 12

C. Samsung Is Entitled To Summary Judgment That It Did Not Directly Infringe The Asserted Method Claims. .......... 12

D. Samsung Is Entitled To Summary Judgment Of No Induced Infringement. .......... 14

1. SoftView Cannot Show Pre-Expiration Knowledge Of The ’154 Patent. .......... 14

2. SoftView Cannot Show Pre-August 2022 Knowledge of the ’628 Patent. .......... 16

E. Samsung Is Entitled To Summary Judgment Of No Willful Infringement. .......... 17

VI. CONCLUSION .......... 17

[redacted]

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*,
2014 WL 2892285 (W.D. Tex. May 12, 2014) ....................15

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ....................3

*Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*,
2022 WL 610796 (E.D. Tex. Jan. 24, 2022) ....................17

*Bayer Healthcare LLC v. Baxalta Inc.*,
989 F.3d 964 (Fed. Cir. 2021) ....................17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....................3, 6

*Dialect, LLC v. Bank of Am., N.A.*,
2024 WL 4980794 (E.D. Tex. Dec. 4, 2024) ....................15

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010) ....................13

*Global-Tech Appliances, Inc. v. S.E.B. S.A.*,
563 U.S. 754 (2011) ....................14

*IMS Tech., Inc. v. Hass Automation, Inc.*,
206 F.3d 1422 (Fed. Cir. 2000) ....................3

*Maxell Ltd. v. Apple Inc.*,
2019 WL 7905455 (E.D. Tex. Oct. 23, 2019) ....................17

*Mirror Worlds Techs., LLC v. Meta Platforms, Inc.*,
122 F.4th 860 (Fed. Cir. 2024) ....................6

*Pictiva Displays Int'l Ltd. v. Samsung Elecs. Co.*,
2025 WL 2947701 (E.D. Tex. Oct. 8, 2025) ....................15

*Ragas v. Tenn. Gas Pipeline Co.*,
136 F.3d 455 (5th Cir. 1998) ....................3

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
30 F.4th 1109 (Fed. Cir. 2022) ....................15

[redacted]

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020)....................14

*Treehouse Avatar LLC v. Valve Corp.*,
54 F.4th 709 (Fed. Cir. 2022) ....................7

*Velocity Commc'n Techs., LLC v. OnePlus Tech. (Shenzhen) Co.*,
2026 WL 1557378 (E.D. Tex. Apr. 13, 2026)....................15

[redacted]

# TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| A | Opening Expert Report of Dr. Mark T. Jones, Appendix G |
| B | Deposition Transcript of Dr. Mark T. Jones |
| C | Opening Expert Report of Dr. Mark T. Jones, Appendix D |
| D | Opening Expert Report of Dr. Mark T. Jones, Appendix E |
| E | Deposition Transcript of Mr. Vladimir Levin |
| F | Deposition Transcript of Mr. Alan Burnett |
| G | Opening Expert Report of Dr. Mark T. Jones, Appendix A |
| H | *Life of a Pixel* (SV_SS398257) |
| I | Email sent by SoftView dated June 19, 2026 |
| J | Document titled "How cc Works" (SV_SS441796–808) |
| K | Supplement to the Expert Report of Dr. Mark T. Jones Addressing the Court's Claim Construction Order |
| L | Opening Expert Report of Mr. Jim Bergman |
| M | Document titled "Blink Coordinate Spaces" (SV_SS441746–7) |
| N | [redacted] |
| O | Deposition Transcript of Mr. Yongha Lee |
| P | Samsung's Sixth Supplemental Objections and Responses to SoftView's First Set of Interrogatories (Nos. 1–14) |
| Q | Rebuttal Expert Report of Dr. Dan Schonfeld |
| R | Opening Expert Report of Dr. Mark T. Jones, Appendix P |
| S | SoftView's Third Supplemental Objections and Responses to Samsung's First Set of Interrogatories (Nos. 1–8) |
| T | [redacted] |
| U | [redacted] |
| V | [redacted] |
| W | [redacted] |
| X | [redacted] |
| Y | Opening Expert Report of Dr. Mark T. Jones |

[redacted]

## TABLE OF DEFINED TERMS

| Term | Definition |
|---|---|
| Plaintiff or SoftView | SoftView, LLC |
| Defendants or Samsung | Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. |
| Google | Google LLC |
| The ’353 patent | U.S. Patent No. 7,461,353 |
| The ’889 patent | U.S. Patent No. 7,844,889 |
| The ’628 patent | U.S. Patent No. 8,533,628 |
| The ’729 patent | U.S. Patent No. 9,519,729 |
| The ’154 patent | U.S. Patent No. 10,083,154 |
| Asserted Patents | The ’353, ’889, ’628, ’729, and ’154 patents |
| Asserted Claims | claims 30, 37, 70, 182, 304, 306, 307, and 318 of the ’353 patent; claims 1, 2, 22, 33, 35, 37, 108, and 115 of the ’889 patent; claims 13, 16–19, 22, 23, and 25 of the ’154 patent; and claims 1, 2, 4, 13, and 14 of the ’628 patent |
| *SoftView I* | *SoftView LLC v. Apple Inc.*, No. 1:10-cv-00389 (D. Del.); *SoftView LLC v. Samsung Elecs. Co., Ltd., et al.*, No. 1:12-cv-00987 (D. Del.) |

[redacted]

## I. INTRODUCTION

Defendants respectfully submit this motion for summary judgment of no infringement of all the patents that SoftView has asserted in this action: the '353, '889, '628, '729, and '154 patents. SoftView's infringement claims fail on multiple grounds.

The Asserted Patents address a problem that no longer exists. They purport to solve the challenge of translating "fixed resolution" web pages designed for desktop computers into a format viewable on mobile devices. But modern web design has long since overtaken this premise. The accused Chromium-based software does not use the patented approach, and SoftView's evidence confirms as much: its expert applied the wrong claim construction for certain claims, relied on elements in the software that do not satisfy the claims, and offered no opinions at all on the '729 patent, which SoftView abandoned after the *Markman* hearing. At every turn, SoftView's infringement theories depend on technical mischaracterizations that are contradicted by undisputed facts and its own expert's admissions.

Beyond these substantive deficiencies, SoftView has no evidence that Samsung directly infringed the asserted method claims in the United States. Likewise, SoftView's claims for induced and willful infringement cannot survive summary judgment at least as to the '154 patent and, as to the majority of the damages period, the '628 patent. SoftView has no evidence that Samsung knew of the '154 patent before it expired or that Samsung knew of the '628 patent [redacted]. The Court should grant summary judgment in Samsung's favor.

## II. STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether Samsung is entitled to summary judgment that the Accused Products do not infringe the Asserted Claims of the Asserted Patents.

2. Whether Samsung is entitled to summary judgment that it has not directly infringed the asserted method claims of the Asserted Patents.

[redacted]

3. Whether Samsung is entitled to summary judgment that it has not indirectly infringed the ’154 patent or, [redacted], the ’628 patent.

4. Whether Samsung is entitled to summary judgment that it is not liable for willful infringement of the ’154 patent or, [redacted], the ’628 patent.

## III. STATEMENT OF UNDISPUTED MATERIAL FACTS

1. In the accused web browser software, GrOps are generated during a process called rasterization and provide graphics instructions used to rasterize tiles. Ex. A (Jones Op. Rpt., Appx. G) at 62; Ex. B (Jones Dep.), 325:6–14. GrOps are part of Skia. Ex. B, 325:15–16. Skia is a standalone graphics library that is used with web browsers and with other types of applications. Ex. C (Jones Op. Rpt., Appx. D), ¶ 3; Ex. B, 326:2–9.

2. The accused software creates tiles during the rasterization stage. Ex. C, ¶ 71. A tile is a small, rectangular sub-region of a web page. Ex. J at 8 (“each Tile is a subrectangle of painted content at a particular scale”). Each tile has a set of GrOps. Ex. B, 326:23–25. GrOps are discarded after they are used to instruct the GPU to render tiles. *Id.* 330:4–16.

3. Neither the DOM tree, nor the layout tree, nor the fragment tree can be recreated from the set of GrOps used to render a particular view of a web page. Ex. B, 327:10–23.

4. If an element on a web page spans multiple tiles, there are separate GrOps to create the texture for that element in each tile. Ex. B, 327:1–5. The separate GrOps do not have information about each other. *Id.* 327:6–9.

5. In the accused software, when GrOps are used to create a tile, the GrOps and the tile reflect a particular scale of the graphics to be drawn in the tile. Ex. B, 324:5–10, 326:12–18. When a zoom operation requires a different scale, Chromium re-rasterizes tiles using new sets of GrOps. *Id.* 324:5–10, 329:19–330:3.

6. In certain versions of Chromium, the LayoutBox object includes a “frame_rect_”

[redacted]

element. Ex. C, ¶ 52. The frame_rect_ element includes coordinates that are relative to another object within the layout tree. Ex. B, 292:20–293:11. The coordinates are not by themselves sufficient to determine the location of the LayoutBox within the web page. *Id.* 294:12–295:3.

7. The Accused Products incorporate a feature called "page zoom" (or "browser zoom"). Ex. D (Jones Op. Rpt., Appx. E) at 15–19; Ex. C at 152; Ex. B, 332:2–334:17.

8. [redacted]

9. [redacted]

10. [redacted]

## IV. LEGAL STANDARDS

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), or where "no reasonable jury could find" in favor of the nonmoving party, *IMS Tech., Inc. v. Hass Automation, Inc.*, 206 F.3d 1422, 1429 (Fed. Cir. 2000). The moving party has the initial burden of demonstrating there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once satisfied, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "[U]nsubstantiated assertions are not competent summary judgment evidence." *Id.* (quoting *Celotex*, 477 U.S. at 324).

## V. ARGUMENT

[redacted]

### A. The Court Should Grant Summary Judgment That The Accused Products Do Not Infringe The Asserted Patents.

The Asserted Patents are directed to an alleged problem with web pages from 25 years ago. According to the patents, as of their filing, "[m]uch of the Internet content has been designed for display on desktop computers with a single target resolution," and such "fixed resolution" content often did not display properly on devices with smaller displays, such as mobile devices. Dkt. 1-5 ('353 patent), 2:4–18. The patents purport to solve this problem by translating web pages designed for desktop computers into a scalable format that "enable[s] users of various devices . . . to view and interact with Web pages in a manner independent of the screen resolution of such device's built-in or associated display, while maintaining the look and feel of browsing such pages with a conventional desktop browser." *Id.* 2:50–56. All Asserted Claims relate to the use of scalable or scaled web page information to render web content for display on a mobile device.

In contrast to the websites of 25 years ago, modern websites are generally *not* designed for "display on desktop computers with a single target resolution." *Id.* 2:4–5. For example, Dr. Jones [redacted] Ex. B, 280:24–281:1; *see also id.* 231:11–14 (agreeing that responsive design is "[redacted]"). Other techniques involve providing mobile devices with web pages specifically designed for such devices. *See id.* 219:23–220:4, 224:10–19. With the alleged problem of the patents having long ceased to exist, the alleged solution—*i.e.*, translating web pages designed for desktop computers into a format that can be displayed on a mobile device—has no applicability to, and is not used by, the accused products in this case.

SoftView accuses Samsung smartphones and tablets on which "Chromium-based (including WebView-based) software has been pre-installed, including the Google Chrome browser, the Samsung Internet browser, Samsung email, and/or Gmail" (the "Accused Products").

[redacted]

Ex. G, ¶ 2. According to Dr. Jones, the accused browser and email apps use Chromium, which is an open-source web browser, to render web page content. *Id.* ¶ 16. The figure below (from a presentation that Dr. Jones relies on) illustrates the steps of the Chromium rendering process at a high level, beginning with web page content and ending with pixels drawn on a display.




Ex. C at 24; *see also* Ex. H at 79.

In his infringement analysis, Dr. Jones does not identify any relevant differences among the Accused Products in their use of Chromium. Accordingly, if Dr. Jones's analysis of Chromium fails to show infringement of a given claim, none of the Accused Products would infringe that claim. For the reasons discussed below, Samsung is entitled to summary judgment that the Accused Products do not infringe any of the Asserted Claims.

### 1. Samsung Is Entitled To Summary Judgment That The Accused Products Do Not Infringe The '729 Patent.

Count I of the Complaint alleges direct and indirect infringement of the '729 patent. *See* Dkt. 1, ¶¶ 56–138. The claims of this patent asserted in SoftView's infringement contentions recite the term "commercially available desktop browser," which the Court construed as "a desktop browser of the type that was commercially available as of the earliest effective filing date of the '729 Patent." Dkt. 97 at 19–21. After the *Markman* hearing, SoftView said it would no longer

[redacted]

assert any claims from the ’729 patent. Ex. I at 1. And SoftView has no expert opinion regarding infringement of this patent. Ex. Y, ¶ 2 (identifying no asserted claims from the ’729 patent); Ex. B, 205:8–14. Because SoftView has no evidence of infringement of the ’729 patent, summary judgment in favor of Samsung is appropriate on Count I of the Complaint. *See Celotex*, 477 U.S. at 322; *Mirror Worlds Techs., LLC v. Meta Platforms, Inc.*, 122 F.4th 860, 875 (Fed. Cir. 2024).

### 2. Samsung Is Entitled To Summary Judgment That The Accused Products Do Not Infringe The ’353 And ’889 Patents.

Each asserted claim of the ’353 and ’889 patents contains a similar limitation that requires “preserving the ***original*** page layout, functionality, and design” of web page content on a mobile device. The Court adopted Samsung’s proposed construction of the term “original”: “as designed for a desktop computer.” Dkt. 97 at 16–18. Therefore, to prove infringement, SoftView must provide evidence that the Accused Products (which are mobile devices) preserve the page layout, functionality, and design of the web page content ***as designed for a desktop computer***. SoftView has failed to do so.

Dr. Jones’s infringement report fails to address the Court’s construction of “original.” Instead, Dr. Jones’s report makes clear that his analysis rests on a construction of [redacted]—that the Court declined to adopt. For example, Dr. Jones opines that [redacted] Ex. A, ¶ 15; *see also id.* ¶ 34 (discussing alleged “[redacted]” of page layout, functionality, and design between the initial rendering and subsequent re-renderings on the same device). Having applied the incorrect construction, Dr. Jones’s opinions regarding the “original” limitation are inherently unreliable and should be excluded, as discussed in Samsung’s motion to exclude his testimony. If that motion is granted, SoftView has no evidence of infringement of these two patents. *See, e.g.*, *Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709,

[redacted]

715 (Fed. Cir. 2022) (affirming rejection of testimony contrary to the claim construction and affirming noninfringement because there was no admissible evidence that the limitation was met).

Dr. Jones attempted to cure his deficient opening report by submitting a "supplemental" report addressing the Court's construction of "original." For the reasons explained in Samsung's opposition to SoftView's motion to supplement (Dkt. 106), Dr. Jones's opinions are untimely and should be stricken. *See* Dkt. 111 at 10–13. In any event, the supplemental report does not create a triable issue of fact because Dr. Jones continues to misapply the Court's construction. In deposition, he suggested the relevant analysis is not whether the mobile device preserves the layout as displayed on a desktop computer, but whether it preserves the layout "[redacted]" downloaded to that device. *See* Ex. B, 238:20–242:20. And with regard to the mobile versus desktop comparison cited in his supplemental report, *see* Ex. K, ¶ 9—a misleading comparison that featured a single web page and a manually shrunken desktop browser, *see* Ex. B, 273:8–276:21—Dr. Jones admitted that the text "[redacted]" on the mobile device and that the same web page displayed on an unaltered desktop browser had a "[redacted]" layout than the layout shown on the mobile device, *see id.*, 276:22–286:11. Given Dr. Jones's failure to use the correct construction, his testimony does not show that the Accused Products preserve the "original" page layout, functionality, and design, and therefore, summary judgment of no infringement is warranted as to the '353 and '889 patents.

### 3. Samsung Is Entitled To Summary Judgment That The Accused Products Do Not Infringe The '628 Patent And Certain Claims Of The '889 Patent.

Claim 108 of the '889 patent requires steps of, *inter alia*, "processing the HTML-based Web content with a rendering engine to generate page layout information" and "employing scaled page layout information and/or data derived therefrom to generate scaled Web page content at multiple scale factors." Claim 1 of the '628 patent recites substantially similar steps. For at least

[redacted]

two independent reasons, Samsung is entitled to summary judgment that the Accused Products do not infringe either of these independent claims or their dependent claims.

*First*, SoftView has not identified any "scaled page layout information" in Chromium. Dr. Jones's argument relies on two different elements at two different stages of the rendering pipeline that he fails to connect. For the "processing" step, he contends that "page layout information" is generated during the "layout" stage depicted in the illustration above: [redacted])." Ex. A, ¶ 44. But for the "employing" step, Dr. Jones asserts that the "scaled page layout information consists of GrOps." *Id.* ¶ 68. According to Dr. Jones, GrOps are "graphics operations which are sent to a GPU [a graphics processing unit] during the rasterization process," *id.* at 62; *see also* SUMF ¶ 1, which occurs near the end of the rendering process (*i.e.*, the "raster" stage in the illustration above). Dr. Jones fails to explain how the alleged page layout information in the layout and fragment trees is also contained in the GrOps created much later in the process. Nor could he: Dr. Jones ***admits*** that GrOps cannot be used to recreate the layout and fragment trees that purportedly contain the "page layout information," SUMF ¶ 3 (citing Ex. B, 327:10–23), and that the size and position of all page elements cannot be determined from GrOps without knowing the applied scale, which is not separately recorded in each individual GrOp, Ex. B, 328:1–13.

Additional undisputed facts confirm that GrOps are not, and do not contain, "page layout information." GrOps are part of "Skia," which is a standalone graphics library that can be used by various applications, including but not limited to web browsers. SUMF ¶ 1. Chromium uses GrOps not as stores of the layout of elements on a web page, but as low-level drawing commands to the GPU that are not specific to rendering web pages or even to discrete objects on the web page.[1] As

[1] GrOps are temporary and are discarded after they are used to instruct the GPU. SUMF ¶ 2.

[redacted]

illustrated below, before creating GrOps, Chromium divides the display into squares referred to as "tiles." *Id.* ¶¶ 1–2. A set of GrOps is created for each tile, with those GrOps responsible only for content within the four corners of that particular tile. *Id.* ¶ 4. If an element of a web page spans multiple tiles, such as a line of text in the illustration below, each tile has a separate GrOp related to only the portion of the content appearing in that tile. *Id.* The GrOp in one tile does not have information about the GrOp in the other tile, even though they relate to the same piece of content. *Id.* Put simply, GrOps are used to generate simple graphics within a subsection of the display, without regard to the overall position and size of the elements on the web page. Thus, there can be no genuine dispute that GrOps do not constitute "scaled page layout information."




Ex. C at 121; *see also* Ex. H at 72.

*Second*, SoftView has no evidence that the alleged "scaled page layout information" (*i.e.*, GrOps) is used to "generate scaled Web page content ***at multiple scale factors***." Dr. Jones does not identify a single GrOp, or data derived therefrom, that generates Web page content at multiple scale factors. To the contrary, it is undisputed that when a set of GrOps is used to create a tile, both the GrOps and the corresponding tile reflect a single scale of the graphics displayed in that tile. SUMF ¶ 5. When the scale of the content changes—*e.g.*, in response to a pinch-to-zoom operation—Chromium creates new sets of GrOps, which are used to generate tiles at the new scale.

[redacted]

*Id.* It therefore follows that a set of GrOps does not "generate scaled Web page content at ***multiple*** scale factors."

In his report, Dr. Jones argues that tiles "from a previous rendering" are sometimes used "during zoom and pan." *See* Ex. A, ¶ 32. But he does not explain when this would happen, nor does he demonstrate that it would result in displaying existing tiles "at multiple scale factors." To the contrary, because a tile is generated at a single scale, the *reuse* of such a tile is not "***generat[ing]*** scaled Web page content at multiple scale factors."

**4. Samsung Is Entitled To Summary Judgment That The Accused Products Do Not Infringe The '154 Patent.**

Claim 13 of the '154 patent—the only asserted independent claim from that patent—requires, *inter alia*, "translating the first representation of the HTML document to generate a scalable vector representation of the HTML document." According to the claim, "generating the scalable vector representation includes" multiple steps, including, "for each HTML object":

> [13k] defining an object datum corresponding to a layout location datum for the HTML object's bounding box;
>
> [13l] generating a vector from the primary datum to the object datum for the HTML object's bounding box;

The patent depicts these steps in Figure 4C, an annotated and excerpted version of which is reproduced below (alongside an annotated and excerpted version of Figure 4A):




Fig. 4A Fig. 4C

SoftView's evidence does not show that the Accused Products meet limitations 13k and 13l.

[redacted]

With respect to limitation 13k, SoftView's expert, Dr. Jones, asserts that a particular pair of XY coordinates associated with a particular layout object in Chromium constitutes the "object datum." Ex. A, ¶ 54. The undisputed evidence, however, establishes that those coordinates do not "correspond[] to a layout location datum for the HTML object's bounding box," as required by the claim.[2] The coordinates on which Dr. Jones relies are not relative to some fixed location on the web page (*e.g.*, the top-left corner), but rather to the position of another layout object. SUMF ¶ 6. Thus, as Dr. Jones admitted, these coordinates are not sufficient to determine the actual location of an HTML object on a web page. *Id*. In addition, the coordinates do not reflect "transforms," which are web page elements that can alter the location of an object within a web page. Ex. B, 295:4–7. In light of these undisputed facts, Dr. Jones's opinion fails as a matter of law to establish that the Accused Products meet limitation 13k.

With respect to limitation 13l, Dr. Jones contends that a different offset in a different part of the code (a so-called "paint offset") is the alleged "vector" that is generated "from the primary datum to the object datum." Ex. A, ¶ 55. But under his theory,[3] this "paint offset" does not reflect the coordinates where a particular element on a web page should be drawn. According to Dr. Jones, "transforms" (which, as noted above, can alter the location of an element) must be applied in order to obtain the actual position of the element. *See* Ex. B, 322:1–8 ("you have to apply all of the transforms to get the position that the texturized pixels will be located at."). Thus, Dr. Jones's alleged vector is not "from the primary datum to the object datum," as required by limitation 13l.

---

[2] The parties agreed that "layout location datum" means a "point defined at an X, Y coordinate that corresponds to the location of the object." Dkt. 80-1 at 7.

[3] Samsung disputes Dr. Jones's characterization of the paint offset and further disputes that it is a "vector" within the Court's construction. However, summary judgment is warranted even under Dr. Jones's infringement theory.

[redacted]

### B. Samsung Is Entitled To Summary Judgment That The Accused Products Include A Non-Infringing Alternative Zoom Feature.

The accused web browsers contain multiple zoom features. SoftView's technical expert, however, only opines that two of those zoom features—pinch-to-zoom and double-tap-to-zoom—infringe the Asserted Claims. *See* Ex. B, 330:21–331:10. SoftView's damages expert, Mr. Bergman, calculates damages based on the alleged value of those features compared to no zooming at all. *See* Ex. L, ¶¶ 131–33. In doing so, he ignores that the accused browsers incorporate another zoom feature called "page zoom" (or "browser zoom") that allows a user to increase or decrease the zoom level while viewing a web page. SUMF ¶ 7. SoftView's technical expert, Dr. Jones, discusses this feature in his opening report, *see* Ex. C at 152; Ex. D at 15–19, but he does not contend that it infringes any of the Asserted Claims, *see* Ex. B, 331:22–334:17.[4]

Samsung has put forth unrebutted evidence that page zoom does not infringe the Asserted Claims. It is undisputed that the use of [redacted] *See* SUMF ¶ 8. As Samsung's technical expert explains, this means that page zoom involves recreating the information that, according to SoftView, satisfies the "scalable" and "scaled" requirements in the Asserted Claims. *See* Ex. Q, ¶ 156. Because page zoom recreates this information, rather than reusing it as the claims require, it does not infringe. *See id.* Given that SoftView has no evidence that page zoom infringes, and given that Mr. Bergman's analysis ignores the existence of this feature, Samsung is entitled to summary judgment that the page zoom feature in the Accused Products does not infringe any of the Asserted Claims.

### C. Samsung Is Entitled To Summary Judgment That It Did Not Directly Infringe The Asserted Method Claims.

[4] The page zoom feature is described in documents produced in the litigation, *e.g.*, Ex. M; Ex. N; SoftView asked Samsung and Google witnesses about it in depositions, Ex. E, 113:2–114:11; Ex. O, 32:2–36:6; and Samsung identified it as non-infringing, *e.g.*, Ex. P at 74, 79, 82, 85.

[redacted]

SoftView alleges that Samsung directly infringed the asserted method claims (all asserted claims of the '889, '154, and '628 patents, and claim 182 of the '353 patent). Dkt. 1, ¶¶ 140, 207, 286, 353. "To infringe a method claim, a person must have practiced all steps of the claimed method," and must have done so "within the United States." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206 (Fed. Cir. 2010) (cleaned up). SoftView has no evidence that Samsung practiced all steps of the claimed methods in the United States before the patents expired. Thus, summary judgment of no direct infringement of the asserted method claims is warranted.

SoftView's technical expert, Dr. Jones, asserts that Samsung "directly infringed by testing (using) zooming functionality of the accused products at offices in the United States." Ex. R, ¶ 6. [redacted] Because each of the asserted method claims requires zooming or enabling a user to zoom at multiple zoom levels, SoftView cannot demonstrate direct infringement of those claims.

If the Court declines to grant summary judgment as to direct infringement, this claim (if proven) would entitle SoftView to no more than nominal damages. SoftView's damages expert only calculates damages based on the sale of the Accused Products; he does *not* address damages

[5] As explained in Samsung's Motion to Exclude and Strike Expert Testimony and Opinions of Dr. Mark Jones, Dr. Jones's opinions regarding alleged acts of direct infringement should be excluded.

[redacted]

as a result of any alleged testing or any other alleged direct infringement by Samsung, Ex. L, ¶¶ 250–74. Thus, at a minimum, the Court should grant Samsung summary judgment that SoftView has not established damages on its claim for direct infringement. *See TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020) (35 U.S.C. § 284 does not mandate damages if a specific dollar amount tied directly to the proven infringing acts is absent).

### D. Samsung Is Entitled To Summary Judgment Of No Induced Infringement.

SoftView alleges induced infringement of the Asserted Patents. *See* Dkt. 1. This requires SoftView to show that Samsung had "knowledge of the existence of the patent that is infringed." *Global-Tech Appliances, Inc. v. S.E.B. S.A.*, 563 U.S. 754, 765 (2011). Summary judgment should be granted in Samsung's favor on SoftView's inducement claims as set forth below.[6]

#### 1. SoftView Cannot Show Pre-Expiration Knowledge Of The '154 Patent.

SoftView's inducement claim for the '154 patent fails as a matter of law because SoftView has not presented any evidence that Samsung knew of the patent, or was willfully blind to its existence, before it expired on April 7, 2021.

***No Actual Knowledge***. It is undisputed that SoftView did not provide Samsung with pre-expiration notice of the '154 patent. SUMF ¶ 9. Nor does SoftView have any evidence that Samsung learned of the patent through another source between its issuance on September 25, 2018, and its expiration two-and-a-half years later, a period during which SoftView did not communicate with Samsung. *Id.* ¶ 10. Samsung could not have learned of the '154 patent during the *SoftView I* litigation, because the application that issued as the '154 patent was not filed until a year *after* the conclusion of that case. *See* Ex. R, ¶ 31. Nor is Samsung's purported knowledge of related

[6] Samsung's motion for judgment on the pleadings demonstrates that SoftView's inducement claims fail for additional reasons, which Samsung maintains. *See* Dkt. 63 at 26–29.

[redacted]

SoftView patents sufficient to establish that Samsung knew of the ’154 patent during its brief existence. *See Dialect, LLC v. Bank of Am., N.A.*, 2024 WL 4980794, at *3 (E.D. Tex. Dec. 4, 2024) (“Plaintiff’s argument that Defendant knew of a related patent application does not plausibly show that Defendant knew of the asserted patents.”). Indeed, “[m]ultiple district courts, post-*Halo*, have held that general knowledge of a patent portfolio without more is insufficient even to plausibly allege knowledge of a particular asserted patent.” *Velocity Commc’n Techs., LLC v. OnePlus Tech. (Shenzhen) Co.*, 2026 WL 1557378, at *6 (E.D. Tex. Apr. 13, 2026) (citing *Dialect*, 2024 WL 4980794, at *3). It therefore follows that general knowledge of a patent portfolio cannot be enough to *prove* knowledge of a particular patent.

***No Willful Blindness***. SoftView also has no evidence that Samsung was willfully blind to the ’154 patent. The Federal Circuit has explained that willful blindness is a standard of “limited scope that surpasses recklessness and negligence” and focuses on “the subjective beliefs (coupled with action to avoid learning more) that characterizes willful blindness.” *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1118 (Fed. Cir. 2022) (quotation omitted). Willful blindness requires that “(1) the defendant [] subjectively believe that there is a high probability that a fact exists and (2) … take deliberate actions to avoid learning of that fact.” *Pictiva Displays Int’l Ltd. v. Samsung Elecs. Co.*, 2025 WL 2947701, at *2 (E.D. Tex. Oct. 8, 2025), *report and recommendation adopted*, 2025 WL 3006765 (E.D. Tex. Oct. 27, 2025).

SoftView’s interrogatory responses and expert report do not cite any evidence of Samsung’s subjective state of mind or any deliberate actions taken to avoid learning of the ’154 patent. *See* Ex. R, ¶¶ 29–83; Ex. S at 35–40. SoftView’s reliance on Samsung’s alleged knowledge of related patents fails as a matter of law to demonstrate willful blindness as to the ’154 patent. *See Dialect*, 2024 WL 4980794, at *3 (citation to parent of asserted patents in defendant’s patent

[redacted]

application insufficient to allege willful blindness); *Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*, 2014 WL 2892285, at *6 (W.D. Tex. May 12, 2014) (holding that "defendant's awareness of a plaintiff[']s patent portfolio is not enough to support a willful blindness claim"). SoftView also relies on improper speculation from its technical expert that "Samsung had reason to be investigating SoftView's patent portfolio."[7] Ex. R, ¶ 73. But this speculation does not show that Samsung took any deliberate actions to avoid learning of the patent. Thus, in addition to being inadmissible, it is insufficient to show willful blindness.

**2. SoftView Cannot Show Pre-August 2022 Knowledge of the '628 Patent.**

SoftView contends that it sent letters to Samsung identifying the '628 patent before it expired. *See* Ex. S at 37; Ex. T; Ex. W; Ex. X. SoftView, however, has failed to identify any evidence that Samsung knew of the patent before the date of the first letter (August 15, 2022).

***No Actual Knowledge***. [redacted]

[7] SoftView attempts to put forth evidence of Samsung's "notice, awareness, and knowledge" through expert testimony from Dr. Jones. *See* Ex. R, ¶¶ 29–83. As set forth in Samsung's Motion to Exclude Expert Testimony and Opinions of Dr. Mark Jones, these opinions are improper.

[redacted] but "[k]nowledge of a patent application alone is insufficient to demonstrate knowledge of the later issued patent," *Maxell Ltd. v. Apple Inc.*, 2019 WL 7905455, at *5 (E.D. Tex. Oct. 23, 2019). [redacted]

***No Willful Blindness***. For the reasons discussed above with regard to the '154 patent, [redacted]

### E. Samsung Is Entitled To Summary Judgment Of No Willful Infringement.

A claim of willful infringement requires proof of knowledge of the asserted patent. *See Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021) (affirming judgment as a matter of law of no willfulness). As discussed above, SoftView cites no evidence that Samsung had pre-expiration knowledge of the '154 patent or knowledge of the '628 patent [redacted] *Supra* § V.D. For at least this reason, SoftView's willful infringement claims fail entirely as to the '154 patent and [redacted] for the '628 patent.[8] *See Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, 2022 WL 610796, at *7 (E.D. Tex. Jan. 24, 2022).

## VI. CONCLUSION

For the foregoing reasons, Samsung respectfully requests that the Court enter summary judgment of no infringement on each of the grounds set forth in this Motion.

[8] Samsung's motion for judgment on the pleadings demonstrates that SoftView's willfulness claims fail for additional reasons, which Samsung maintains. *See* Dkt. 63 at 29–30.

[redacted]

Dated: August 18, 2026

Respectfully submitted,

*/s/ Peter Swanson*

Brian Bieluch (CA Bar No. 331167)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars,
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: bbieluch@cov.com

Richard L. Rainey (D.C. Bar No. 452996)
Kevin B. Collins (D.C. Bar No. 445305)
Peter A. Swanson (D.C. Bar No. 497348)
Daniel Farnoly (D.C. Bar No. 1655818)
Steven A. Fisher (D.C. Bar No. 90007338)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 778-5565
Email: rrainey@cov.com
Email: kcollins@cov.com
Email: pswanson@cov.com
Email: dfarnoly@cov.com
Email: sfisher@cov.com

Thomas Garten (CA Bar No. 247122)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-7091
Email: tgarten@cov.com

Patrick N. Flynn (CA Bar No. 286108)
**COVINGTON & BURLING LLP**
3000 El Camino Real
5 Palo Alto Square
Palo Alto, California 94306
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
Email: pflynn@cov.com

[redacted]

Sean Hong (NY Bar No. 6171292)
**COVINGTON & BURLING LLP**
30 Hudson Yards
New York, NY 10001-2170
Telephone: (212) 841-1000
Facsimile: (212) 841-1010
Email: shong@cov.com

Robert W. Unikel (Ill. Bar No. 6216974)
**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor
Chicago, IL 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
robertunikel@paulhastings.com

Andrea P. Roberts (CA Bar No. 228128)
**PAUL HASTINGS LLP**
1117 S. California Avenue
Palo Alto, CA 94304
Telephone: (650) 320-1800
Facsimile: (650) 320-1900
andrearoberts@paulhastings.com

Robert R. Laurenzi (NY Bar No. 3024676)
**PAUL HASTINGS LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Facsimile: (212) 318-6100
robertlaurenzi@paulhastings.com

Maksim Mints (MA Bar No. 712372)
Puja V. Patel (D.C. Bar No. 1779895)
**PAUL HASTINGS LLP**
2050 M Street NW
Washington, DC 20036
Telephone: (202) 551-1700
Facsimile: (202) 551-1705
Email: maksimmints@paulhastings.com
Email: pujapatel@paulhastings.com

Melissa R. Smith
Texas State Bar No. 07921800
**GILLAM & SMITH, LLP**
303 S. Washington Ave.

[redacted]

Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

*Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

[redacted]

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via electronic mail and with Notice via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 18th day of August 2026.

*/s/ Peter Swanson*

*Attorney for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

[redacted]

[redacted]

[redacted]